IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| KIM M.,<br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>        Defendant. | Case No. 4:22-cv-04014-JEH |

## Order and Opinion

Now before the Court is the Plaintiff Kim M.'s Motion for Summary Judgment (Doc. 10), the Commissioner's Motion for Summary Affirmance (Doc. 12), and the Plaintiff's Reply (Doc. 13).[1] For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

Kim M. filed an application for disability insurance benefits (DIB) on September 14, 2020, alleging disability beginning on September 7, 2016. Her DIB claim was denied initially on December 8, 2020 and upon reconsideration on March 12, 2021. After a request for hearing before an administrative law judge, a hearing was held on August 24, 2021 before the Honorable Robert H. Schwartz (ALJ). At the hearing, Kim was represented by an attorney, and Kim and a vocational expert (VE) testified. Following the hearing, Kim's DIB claim was

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 9).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 5) on the docket.

1

denied on September 23, 2021. Her request for review by the Appeals Council was denied on December 20, 2021, making the ALJ's Decision the final decision of the Commissioner. Kim timely filed the instant civil action seeking review of the ALJ's Decision on January 24, 2022.

## II

Kim argues the ALJ committed the following errors: 1) the ALJ's assessment of subjective complaints and RFC were patently wrong; and 2) failure to consider Kim's subjective complaints and RFC was harmful error.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for

disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past

work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Kim claims error on the ALJ's part at Step Four.

## A

At Step one, the ALJ determined Kim had not engaged in substantial gainful activity during the period from her alleged onset date of September 7, 2016 through her date last insured of September 30, 2017. AR 17. At Step Two, the ALJ determined Kim had the following severe impairments: affective disorder with psychotic symptoms; anxiety disorder; and history of chronic lumbar and cervical strain. *Id*. At Step Three, the ALJ determined Kim did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 18. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) with the following non-exertional limitations. She could climb, stoop, kneel, crouch and/or crawl no more than frequently. She needed to avoid concentrated exposure to loud or very loud environments and hazards like unprotected heights and dangerous machinery. She could understand complex and/or detailed instructions but due to deficits in memory, concentration, persistence and pace, she was reasonably limited to performing simple and routine tasks on a sustained basis with only routine breaks; instructions could be detailed but uninvolved, and tasks must have involved no more than a few concrete variables in or from standardized situations. Any work should have involved no more than ordinary or routine changes in work setting or duties. She would have done best in a setting with reduced social demands; considering this, any work should have involved no more than occasional interaction or contact with the general public, and any work should not have required more than occasional interaction with coworkers or supervisors. Any work should not have required a fast production rate pace or strict hourly production quotas.

AR 19.  The ALJ found, through the date last insured, Kim was unable to perform any past relevant work.  AR 26.  At Step Five, the ALJ determined that, through the date last insured, considering Kim's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Kim could perform.  *Id*.  The ALJ concluded Kim was not under a disability at any time from the alleged onset date of September 7, 2016 through the date last insured of September 30, 2017.  AR 27.

**B**

Kim first argues that the ALJ's stated reasons for finding she was mentally capable of performing the tasks set forth in the RFC were illogical, not allowed, based upon misrepresentations of the record, and inconsistent with the record evidence.  The Commissioner refutes any such errors by the ALJ, instead arguing that the ALJ thoroughly considered Kim's symptoms and treatment history and explained why they portrayed a person limited, but not disabled by, mental health symptoms.

Pursuant to 20 C.F.R. § 404.1529(a), an ALJ must consider a claimant's symptoms and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  In evaluating the intensity and persistence of a claimant's symptoms, the ALJ must specifically "consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [her]."  *Id*.  Here, inescapably, Kim's challenge to the ALJ's Decision is nothing more than a request for the Court to come out the other way, that is, in Kim's favor.

At Step Four of the Decision, the ALJ began with a recitation of Kim's subjective complaints which included that: she was disabled due to bipolar 1 with

psychotic features, severe anxiety, and manic depression; that her medications were not quite right yet; that she said she had a history of problems with auditory hallucinations; that she had problems with concentration and focus on and off for years; that she had difficulty leaving her home and being around people; that her anxiety was triggered by loud noises, being around a lot of people, or driving; and that chores were difficult due to depression/lack of motivation. The ALJ acknowledged that the medical record confirmed Kim's history of three mental health hospitalizations between 2008 and the end of 2015 and that she began treating at Bridgeway in November 2015 where she was eventually diagnosed with bipolar disorder with psychotic features. The ALJ then proceeded to discuss what Kim's mental health records dated between September 2, 2016 ("just before the alleged onset date") and early September 2017 provided.

  Kim's hygiene and grooming were repeatedly fair, her mood was variably alright or normal and pleasant, her affect consistently appropriate, her thought processes repeatedly coherent and logical, her speech normal, and her insight and judgment typically fair. The ALJ considered that in October 2016, Kim reported she felt much more stable and was able to manage some daily depressive symptoms, though in March 2017, Kim presented appearing disheveled, anxious, and depressed and said she had not been sleeping. The ALJ also considered that throughout the time under consideration, Kim's records indicated that at different times her hallucinations were less frequent, "not as evil," she was not hearing voices and her medication was working, she only heard voices when she did not take medication, she *was* hearing voices, and her voices were gone. Kim reported at some times that she was doing well, at one time that she felt anxious and restless, and at a few other times that she felt depressed.

  The ALJ made it easy for the Court to identify his reasons for why the ALJ found Kim's statements as to her symptoms were not entirely consistent with the

6

medical and other record evidence. He prefaced his discussion of the foregoing mental health records by stating, "The following summary and discussion of the medical evidence supports this assessment." AR 20. The ALJ concluded his discussion of the foregoing mental health records by stating, "The claimant . . . had several mental impairments that caused significant limitations prior to the date last insured. However, she has not met her burden of proving that she could not perform any sustained work during the relevant period." AR 24. The ALJ explained further:

> The claimant reportedly received inpatient mental health treatment three times between 2008 and her alleged onset date, and she sought treatment at Bridgeway after her last hospitalization . . . Despite her history of hospitalization, reported earnings indicate that she has engaged in substantial gainful activity since then, albeit somewhat more sporadically. Treatment records since late 2015 document ongoing symptoms, but the claimant appeared to benefit from medication and counseling. Treatment records as of the alleged onset date document ongoing symptoms of depression and breakthrough psychotic symptoms, but overall she reported improvement with treatment before her date last insured.

AR 24. The Court can sufficiently trace the path of the ALJ's reasoning. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). Kim nevertheless faults that reasoning, but the Court rejects each point of error in turn.

Recently, the Seventh Circuit Court of Appeals reiterated that an ALJ's credibility determination will be upheld unless that determination is "patently wrong." *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022). A determination is "patently wrong" where it lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). Kim first argues that the ALJ's first stated reason

(as Kim identifies it) for rejecting her symptoms were severe as she alleged – that she performed substantial gainful activity (SGA) prior to her alleged onset date – is irrelevant, not logical, and not allowed under the five-step analysis. The Commissioner counters that a plain reading of the Decision suggests the ALJ cited Kim's engagement in sporadic SGA after inpatient mental health treatment, among other things, as background regarding Kim's treatment history just before her alleged onset date. A commonsense reading of that portion of the Decision indicates the ALJ clearly considered the fact that Kim remained able to engage in SGA, at least sporadically, to suggest that her ongoing mental health issues were not as limiting as she professed. The Court finds no issue with the ALJ reasoning as such; it was a fact of record that detracted from Kim's statements of the persistence and limiting effects of her mental health issues, and it was close in time (last hospitalization in late 2015) to the period under consideration (September 2016 through September 2017).

     Kim next takes issue with the ALJ's stated reason that she benefitted from medication and counseling and improved since her hospitalization. Kim somewhat misrepresents what the ALJ stated. He did not state Kim improved since her hospitalization, but rather that she improved with the treatment she received before her date last insured. The ALJ backed that up with specific examples including Kim's report of doing very well later in March 2017 following medication adjustments in February and March 2017 and doing well by early September 2017 following further medication adjustments in May, June 2017, and July 2017. Kim attempts to bolster her argument with the further contention that the ALJ failed to properly consider the waxing and waning nature of Kim's mental health symptoms and with citation to examples. Notably, she repeats much the same information that the ALJ explicitly considered in his Decision, including the fact that at times Kim complained of increased symptoms and at other times

represented she was doing well. That Kim is asking the Court to reweigh the evidence is underscored by the fact that she has done nothing more than highlight additional portions of the cited and discussed records, emphasizing different parts, and arguing the ALJ erred. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it"). Those additional portions are not so different as to reveal the ALJ ignored contrary evidence supportive of disability. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (reiterating that an ALJ "may not ignore an entire line of evidence that is contrary to the ruling"); *see also Gedatus*, 994 F.3d at 903 (clarifying "the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence"). Moreover, in a couple instances in her opening brief, Kim blatantly offers her own more favorable interpretation of certain cited and discussed records. *See* Plf's MSJ (Doc. 10-1 at pg. 13) (deciding that "[f]air insight and judgment assessments indicate that Kim was not a good judge of her situation and contradict her assertions that 'things are well at this time'); *id*. at pg. 14 (deciding her mental health counselor's notation that Kim had command hallucinations "at times" was "consistent with treatment notes that show Kim's hallucinations were sporadic and unpredictable"). As for the ALJ's consideration of the evidence provided by Kim's mental health counselor, he pointed out that said evidence did not meet the meaning of a "medical opinion." AR 25.

In similar fashion, Kim lists her reports and explanations of her mental health symptoms and how they affected her during the relevant time. She says such evidence was largely ignored and is consistent with being off task more than 10% of the workday and missing more than four to seven workdays a year due to mental health symptoms and fatigue. Again, it was the ALJ's obligation in the first

instance to consider the evidence pertaining to Kim's subjective symptoms, sufficiently trace his reasoning, and reach a substantially supported conclusion. Kim's arguments seek to have this Court improperly "decide the facts anew, reweigh the evidence, [and] substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

Kim is dissatisfied with the ALJ's two stated reasons, bolstered by citation to and discussion of record evidence, but the fact remains that the ALJ "adequately articulate[d] [his] analysis so that [this reviewing court] can follow [his] reasoning." *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015).  His articulation reveals that he found repetitive "fair" findings on Kim's mental health examinations, her coherent and logical thought processes even while hearing voices, her ability to remain cooperative even when anxious and depressed, her simultaneous reports of ongoing anxiety and doing alright, and her unchanged and unremarkable mental status exams even after the date last insured supported his conclusion that Kim was limited by her mental health symptoms only to the extent incorporated into the RFC finding.  The Court thus finds unpersuasive Kim's contention that the ALJ improperly considered her ability to drive during the relevant period.  The ALJ considered that Kim did not drive due to hearing voices and could drive locally but had a fear of the unknown going outside of her town.  Though the ALJ's reliance upon Kim's mental health exams would have been reason enough to support his reliance upon her ability to drive, the ALJ explained further that while Kim attributed her inability to focus on her auditory hallucinations, records indicated Kim "was indeed driving during [the relevant period] and records did "not mention any significant difficulty with attention/concentration, though they [did] cite the claimant being coherent and logical." AR 25.

Significantly, this is not a case in which the ALJ entirely disregarded any evidence of mental health symptoms. The ALJ included an extensive array of mental limitations in the RFC responsive to the extent of limitation he found sufficiently supported by the record evidence. The ALJ was certainly succinct in stating his reasons for not finding Kim was as limited by her symptoms as she alleged, but his subjective symptom assessment also certainly included both explanation and support.

## C

Kim's second argument is an extension of her first one.[3] She contends the ALJ failed to incorporate restrictions for being off-task more than 10% of the work day and missing work more than two days per month due to mental health symptoms. In other words, Kim faults the ALJ for failing to more fully accept her statements and complaints about the extent to which she was limited by her mental health symptoms. Because the ALJ did not reversibly err in his consideration of Kim's subjective symptoms, Kim's second argument necessary fails. *Cf. Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations *supported by the medical record*") (emphasis added). According to Kim, the evidence showed that she exhibited work preclusive symptoms at nearly every appointment. But, again, the ALJ expressly considered those symptoms alongside the evidence of record as a whole and sufficiently reasoned that they were not work preclusive. He cited medical records (see *supra*) as well as Kim's ability to provide information about her health, spend time with family and attend church, get along with her husband and sister, and attend to her grooming and hygiene (except for one occasion following a medication

---

[3] For this reason, the Court does not agree with the Commissioner that Kim's off-task and absenteeism arguments are undeveloped and waived.

11

adjustment). The Commissioner puts it plainly: Kim "does not get to decide what limitations are in her [RFC] assessment – the ALJ does." Dft's MSA (Doc. 12-1 at pg. 8) (citing 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . the administrative law judge . . . is responsible for assessing your residual functional capacity")).

## IV

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 10) is DENIED and the Defendant's Motion for Summary Affirmance (Doc. 12) is GRANTED. The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Kim M., is AFFIRMED." This matter is now terminated.

*It is so ordered.*

Entered on May 12, 2023.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE